IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AUDREY L. COLCORD                      Case No. 6:13-cv-02068-MA

                 Plaintiff,              OPINION AND ORDER

     v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY

              Defendant.

JAMES W. MOLLER
8655 SW Citizens Dr., Suite 104
Portland, OR 97070

     Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

L. JAMALA EDWARDS
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

     Attorneys for Defendant

1 - OPINION AND ORDER

Marsh, Judge

Plaintiff Audrey Colcord seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403, and Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, I reverse and remand for an immediate calculation and award of benefits.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for DIB and SSI on December 17, 2009, alleging disability beginning September 3, 2006, due to depression, psychosis, anxiety disorder, insomnia, and schizophrenia. Plaintiff last met the insured status requirements for a DIB application on March 31, 2007.

Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a hearing on April 26, 2012, at which plaintiff's attorney appeared and testified. Plaintiff did not attend the hearing. A vocational expert, Jay Stutz, also appeared at the hearing and testified. On June 26, 2012, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's

decision became the final decision of the Commissioner for purposes of review.

Born in 1973, plaintiff was 38 years old on the date of the ALJ's adverse decision. Plaintiff has a college degree. Plaintiff's past relevant work includes audiovisual technician, movie theater attendant, and photographer.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe impairments: schizophrenia, paranoid type; schizoid or avoidant personality traits. At step three, the ALJ found that plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform a full range of work at all exertional levels as defined in 20 C.F.R. §§ 404.1567, 416.967 with several additional non-exertional work limitations. Plaintiff is limited to work with no public contact, occasional and superficial co-worker contact, and would need a break every two hours in order to maintain appropriate focus and concentration on tasks. Plaintiff is able to only apply commonsense understanding to carry out detailed but uninvolved written or oral instructions or deal with problems involving a few concrete variables in or from standardized situations (reasoning level 2).

At step four, the ALJ found plaintiff is unable to perform any past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as janitor, automobile detailer, and budder. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from September 3, 2006, through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) failed to properly evaluate the opinions

of treating physician, Paul Helms, M.D.; and (2) improperly found
that plaintiff's impairments did not meet or equal Listing 12.03.

### STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if
the Commissioner applied the proper legal standards and the
findings are supported by substantial evidence in the record. 42
U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir.
2010). "Substantial evidence is more than a mere scintilla but less
than a preponderance; it is such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion." *Hill*, 698
F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at
690. The court must weigh all the evidence, whether it supports or
detracts from the Commissioner's decision. *Martinez v. Heckler*, 807
F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be
upheld, even if the evidence is susceptible to more than one
rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*,
359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the
Commissioner's conclusion, the Commissioner must be affirmed; "the
court may not substitute its judgment for that of the
Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
2001).

## DISCUSSION

### I.    The ALJ Erred in Evaluating Treating Physician's Opinion

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn,* 495 F.3d at 631 (internal quotations omitted)(alterations in original); 20 C.F.R. § 404.1527(c). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If a treating or examining physician's opinion is contradicted by another physician's opinion, it may be rejected by specific and legitimate reasons. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148(9th Cir. 2001). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Id.* at 1149.

Plaintiff argues that the ALJ failed to provide sufficient reasons for discounting the opinions of Paul Helms, M.D. Dr. Helms

is plaintiff's treating psychiatrist through Lane County Mental Health. Plaintiff experienced a psychotic break in November 2009. Tr. 218. Plaintiff was involuntarily committed to the mental health system for 180 days. Tr. 222, 243. After being treated at Sacred Heart Hospital for over a month from November to December 2009, plaintiff was discharged to a psychiatric hospital, Blue Mountain Recovery Center (Blue Mountain), for the remainder of plaintiff's civil commitment. Tr. 221-222.

Upon release from Blue Mountain in February 2010, Dr. Helms treated plaintiff from 2010 through 2011, diagnosing her with schizophrenia, paranoid type. Dr. Helms retired at the end of 2011, but plaintiff continued treatment with Lane County Mental Health. Tr. 332. Dr. Helms's treatment notes frequently describe plaintiff as presenting with a restricted affect, limited insight, and Dr. Helms consistently assigned Global Assessment Function (GAF) scores between 35-45.[1] Tr. 299, 303, 319, 324, 325, 327, 329, 331.

---

[1] The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100. A GAF of 31-40 indicates some impairment in reality testing or communication (speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., avoiding friends, neglecting family, unable to work). A GAF of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job). *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) pp. 31-34 (4th ed. 2000).

Dr. Helms provided two medical opinions. First, in a letter dated May 11, 2010, Dr. Helms opined that plaintiff has exhibited some improvement but is still vulnerable. Tr. 309. In that letter, Dr. Helms also opined that plaintiff was not capable of competitive employment in the next twelve months. *Id.* Second, on September 15, 2010, Dr. Helms opined in a medical source statement that plaintiff has difficulty interacting with others, and that plaintiff has several marked limitations in the areas of social functioning and concentration, persistence, and pace. Tr. 290, 293-94. Specifically, Dr. Helms found that plaintiff is markedly limited in her ability to accept instructions and respond appropriately to criticism from supervisors, and that plaintiff is markedly limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and work at a consistent pace without an unreasonable number of breaks. Tr. 294.

Because Dr. Helms's opinions were contradicted,[2] the ALJ was required to provide specific and legitimate reasons, backed by

---

[2] Bill Hennings, Ph.D., a nonexamining psychologist, completed a Psychiatric Review Technique form on March 31, 2010, opining that plaintiff's schizophrenia causes only mild restrictions in her activities of daily living, and moderate limitations in maintaining social functioning and maintaining concentration, persistence, and pace. Tr. 262-274. He further opined in a Mental Residual Functional Capacity (MRFC) form that plaintiff could remember three to four step instructions, maintain concentration, persistence, and pace for simple tasks for normal two hour work periods and should not have close or frequent contact with the general public or coworkers. Tr. 278. Dr. Hennings's opinions were affirmed by Dorothy Anderson, Ph.D., a nonexamining psychologist, on July 29, 2010. Tr. 284.

substantial evidence, to reject his opinion. *Bayliss*, 427 F.3d at 1216. In the decision, the ALJ gave Dr. Helms's opinions "little weight" because:   (1) the opinions are inconsistent with Dr. Helms's treatment notes; (2) Dr. Helms lacks an extensive treatment history with plaintiff; and (3) the opinions are inconsistent with the medical record, including other medical opinions.  Having carefully reviewed the record, I conclude that the ALJ's reasoning falls short.

Inconsistency between a treating physician's opinion and his own treatment notes is a specific and legitimate reason for rejecting that opinion. *Ghanim,* 763 F.3d at 1161. Contrary to the ALJ's conclusion, Dr. Helms's opinions are consistent with his treatment notes. For example, in February 2010, Dr. Helms noted that plaintiff presented with a constricted affect and fair insight and judgment. Tr. 298. Dr. Helms diagnosed plaintiff with psychotic disorder, not otherwise specified (NOS)  and assigned a GAF of 45. Tr. 299. In March 2010, Dr. Helms indicated that plaintiff reported trouble sleeping and feeling anxious. Tr. 303. In August 2010, Dr. Helms noted that plaintiff reported visual hallucinations and feelings of paranoia. Tr. 318. Dr. Helms consistently observed a restricted affect and limited insight and diagnosed plaintiff with schizophrenia, paranoid type. *See generally,* Tr. 313, 315, 319, 325, 326, 329, 330, 331, 332.

Although the ALJ characterizes Dr. Helms's treatment notes as revealing relatively normal mental status examinations, these findings do not accurately capture plaintiff's mental functioning. "'Individuals with chronic psychotic disorders commonly have their lives structured in such a way as to minimize stress and reduce their signs and symptoms. Such individuals may be much more impaired than their signs and symptoms would indicate.'" *Garrison v. Colvin,* 759 F.3d 995, 1017 (9th Cir. 2014) (Citing *Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir. 2001)). In this case, plaintiff lives in a highly structured and supportive living environment with her parents. In February 2010, Blue Mountain released plaintiff to her parents' care. Tr. 243, 256. Plaintiff requires significant reminders to attend therapy and is frequently late or misses therapy appointments. Tr. 314, 315-16, 328, 329. Plaintiff's mother monitors plaintiff's behavior and observes whether plaintiff has taken all of her medications. Tr. 176, 317, 326, 330. In August 2010, Dr. Helms assessed that plaintiff was "dependent on her family for housing and support." Tr. 318. Thus, I conclude that the ALJ's determination that Dr. Helms's opinions are inconsistent with his treatment notes is not supported by substantial evidence, and therefore, does not provide a specific and legitimate basis to reject his opinion. *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012).

The ALJ also discredited Dr. Helms's opinions because of his short treatment history with plaintiff. "Length of the treatment history and the frequency of examination by the treating physician, [and] the nature and extent of the treatment relationship between the patient and the treating physician" are all factors an ALJ must consider in determining how much weight to accord to a treating physician's medical opinion. *Ghanim*, 763 F.3d at 1161; 20 § C.F.R. 404.1527(c). The ALJ specifically noted that prior to Dr. Helms's May 2010 opinion, he had only treated plaintiff for three months. Tr. 19. I disagree with the ALJ's reasoning.

Although Dr. Helms provided his May 2010 opinion after only three months of treatment, he was then meeting with plaintiff on a bi-weekly basis. Dr. Helms's treatment included a new patient assessment, medication management and individual therapy appointments. Tr. 297-99, 303-07. Additionally, plaintiff met numerous times with Cherie Nelson, a qualified mental health associate in Dr. Helms's practice, regarding medication complaints and case management issues. Tr. 302-308. The ALJ's reasoning also overlooks that plaintiff continued treatment with Dr. Helms every six to eight weeks until his retirement at the end of 2011. Tr. 313, 315, 324, 325-332. Dr. Helms frequently treated plaintiff over the course of two years. Therefore, the ALJ's rejection of Dr. Helms's opinions because of his short treatment history with

plaintiff is not a specific or legitimate reason on the record before me.

Lastly, the ALJ's finding that Dr. Helms's opinions are inconsistent with the overall medical record is not supported by substantial evidence. For example, on November 13, 2009, plaintiff threatened her family with a knife and pair of scissors; police had to forcibly restrain plaintiff to transport her to the emergency room. Tr. 218. In the emergency room, examining physician Melissa DeFreest, M.D., sedated plaintiff and placed her on a mental health hold. Tr. 220. Dr. DeFreest diagnosed acute psychosis. *Id.* As discussed above, plaintiff was involuntarily committed to the mental health system for 180 days. Tr. 243. An examination dated December 29, 2009, at Sacred Heart Hospital noted a GAF between 30-35.[3] In January 2010, treatment notes from Blue Mountain indicated that plaintiff ceased[4] taking her medications and decompensated into psychosis. Tr. 250. Most notably, plaintiff has been treated with a significant number of anti-psychotic medications including:

_____

[3] A GAF of 21-30 indicates behavior that is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g. sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or an inability to function in almost all areas (such as staying in bed all day). *DSM-IV* at 32.

[4] Plaintiff engaged in "cheeking," where she hid her pills in the inside of her cheeks to avoid taking her medications. Tr. 250.

12 - OPINION AND ORDER

Perphenazine, Abilify, Ativan, Zyprexa, and Klonopin. Tr. 250, 303, 306.

Contrary to the ALJ's determination, the opinion of Peter Davidson, M.D. an examining physician with Blue Mountain, is consistent with Dr. Helms's opinions. Dr. Davidson opined on February 16, 2010 that "plaintiff is an excellent candidate for recovery from her severe and persistent mental disorder, *should she choose to accept its existence*." Tr. 251. Dr. Davidson further recommended that plaintiff "be encouraged to work outside the home" and participate in educational activity. *Id*. The fact that Dr. Davidson encouraged plaintiff to work and participate in activities does not mean that he opined plaintiff is capable of handling the stress and rigors of full time employment. *Id*.

Furthermore, the ALJ's discussion of Dr. Davidson's opinion is incomplete. To be sure, Dr. Davidson opined that plaintiff is "likely to experiment with going off her medications in the future [and] should she do this she should be hospitalized immediately before becoming a danger to herself and others." *Id*. Dr. Davidson's treatment notes show that plaintiff had a euthymic mood with a slightly guarded affect but may have covert paranoia. Tr. 250. Dr. Davidson diagnosed plaintiff with schizophrenia, paranoid type and assigned a GAF between 50-55[5] at the time of discharge from Blue

_____

[5] A GAF of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational or school functioning. *DSM-IV* at 32.

13 - OPINION AND ORDER

Mountain. Tr. 249. Because he recognized plaintiff's likelihood of mental relapse, Dr. Davidson's opinion further supports Dr. Helms's opinions that plaintiff has marked limitations in concentration, persistence, and pace.

Although plaintiff does not challenge the unfavorable credibility finding, I nevertheless have done so and conclude that it is not supported by substantial evidence. The ALJ primarily discredited plaintiff based on her lack of medical compliance finding that: "[plaintiff's] symptoms, if and when present, also are entangled in issues of compliance with medical treatment, particularly adherence to taking her medications as prescribed. With compliance, her symptoms are minimized." Tr. 20-21.

However, the ALJ fails to acknowledge that plaintiff's lack of adherence to taking her medications is a significant symptom of her mental illness. Here, the record shows that plaintiff's occasional attempts to cease taking medication were at least in part a result of her underlying schizophrenia. Plaintiff abruptly stopped taking her medications both while hospitalized and at home with her parents. Tr. 222, 250, 312, 317, 324. For example, hospital doctors had to obtain a medication override to medicate plaintiff during her psychotic breakdown in November 2009. Tr. 222. Dr. Davidson noted plaintiff discontinued taking her medications in January 2010 and that she decompensated as a result. Tr. 250, 256. In August 2010, plaintiff's mother had to crush plaintiff's medication pills

14 - OPINION AND ORDER

into a glass of water and observe her for thirty minutes to ensure plaintiff had taken her medications. Tr. 317. As the Ninth Circuit has aptly noted "we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions." *Garrison*, 759 F.3d at 1018; *see also, Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

In short, the ALJ failed to cite specific and legitimate reasons, supported by substantial evidence to discount the opinions of Dr. Helms; therefore, the ALJ has erred.

## II. <u>The ALJ Erred in Finding That Plaintiff Did Not Meet Listing 12.03</u>

The Social Security Regulations' "Listing of Impairments" generally describes impairments that are so severe as to be considered presumptively disabling, without further consideration of a claimant's residual functional capacity, past relevant work, or other jobs. 20 C.F.R. §§ 404.1520(d), 416.920(d). A diagnosis of a listed impairment is not sufficient; the claimant must also satisfy the findings shown in the listing of that impairment. *Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990). A claimant has the burden to establish that he or she meets or equals the criteria for a listed impairment based on medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Tackett,* 180 F.3d at 1100. In this case, plaintiff asserts that the ALJ erred by relying on the

15 - OPINION AND ORDER

opinion of nonexamining physician, Bill Hennings, Ph.D. in finding

that plaintiff did not meet or equal listing 12.03. I agree.

The ALJ did not discuss in detail whether plaintiff met the

"A" criteria of Listing 12.03. Instead, the ALJ only discussed

whether plaintiff satisfied the "B" criteria of Listing 12.03.[6]

Listing 12.03 provides in relevant part:

> Schizophrenic, paranoid, and other psychotic disorders: characterized by the onset of psychotic features with deterioration from a previous level of functioning.
>
> The required level of severity for these disorders is met when the requirements in A and B are satisfied or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one or more of the following...
>
>> 1. Delusions or hallucinations; or
>>
>> 2. Catatonic or other grossly disorganized behavior; or
>>
>> 3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:
>>
>>> (a) blunt affect; or
>>> (b) flat affect; or
>>> (c) inappropriate affect; or
>>
>> 4. Emotional withdrawal and/or isolation; AND
>
> B. Resulting in at least two of the following:
>
>> 1. Marked restriction of activities of daily living; or

---

[6] The ALJ found that plaintiff fails to satisfy the "C" criteria of Listing 12.03 but did not provide any rationale or evidence to support this finding. Tr. 13.

16 - OPINION AND ORDER

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration; or

C. Medically documented history of chronic schizophrenia, paranoid or other psychotic disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such a marginal adjustment that even a minimal increase in mental demands would be predicted to cause the individual to decompensate; or

3. Current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03 (hereinafter Listing 12.03).

In the decision, the ALJ determined that plaintiff's schizophrenia causes only mild restrictions in her activities of daily living, moderate limitations in social functioning, and moderate difficulties with concentration, persistence, and pace, and plaintiff had experienced one episode of decompensation of extended duration. Tr. 13. The ALJ's step three findings mirror the limitations expressed by Dr. Hennings. Tr. 262-274. Specifically, Dr. Hennings opined that "it is reasonable to conclude that twelve

months post her onset, as long as she continues her medications, she will be functionally improved." Tr. 274.

While the ALJ gave "great weight" to Dr. Hennings's opinion, he did not address the fact that Dr. Hennings's opinion is a projection of plaintiff's mental functioning twelve months after her psychotic break, and is premised on plaintiff regularly taking her medication. Tr. 274. However, medical treatment notes indicate that plaintiff stopped taking her medications after Dr. Hennings issued his opinion, which medical providers attributed as a symptom of her illness. Tr. 222, 250, 256, 312, 317, 324. Dr. Hennings's projected improvement of plaintiff's mental functioning overlooks plaintiff's inability to maintain medical compliance due to her illness.

Moreover, contrary to the ALJ's conclusion, Dr. Hennings's opinion is unsupported by the overall medical record. Plaintiff's mental functioning did not improve in the twelve months following her psychotic break. For example, plaintiff continued to require a highly supportive living environment following her discharge from Blue Mountain in February 2010. Tr. Tr. 314, 315-16, 324, 328. Dr. Helms consistently assigned GAF scores between 35-45. Tr. 299, 303, 319, 324, 325, 331. Examinations often noted a constricted affect and limited insight. *See generally,* Tr. 313, 315, 326, 329, 330, 331, 332. Plaintiff also endorsed auditory hallucinations and delusions. Tr. 218-19, 250, 317. Similarly Dr. Helms's opinion,

which is supported by substantial evidence, reflects that plaintiff is more limited in the "B" criteria than opined by Dr. Hennings. As previously discussed, Dr. Helms opined that plaintiff had marked limitations in the areas of social functioning and concentration, persistence, and pace. Tr. 292-95. Thus, I conclude that Dr. Hennings's opinion is not supported by substantial evidence, and the ALJ erred in relying on it.

In sum, I find that the medical record as a whole does not provide substantial evidence supporting the ALJ's step-three determination that plaintiff has only mild restrictions in activities of daily living and moderate difficulties in social functioning and concentration, persistence, and pace, and consequently, that her impairments did not meet the requirements of Listing 12.03.

## III. **Credit as True**

After finding the ALJ erred, this court has the discretion to remand for further proceedings or for immediate payment of benefits. *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed. *Vasquez*, 572 F.3d at 593.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.*

Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. *Connett v. Barnhart*, 340 F.3d 873, 876 (9th Cir. 2003). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010). Moreover, "[plaintiff] is not entitled to benefits under the statute unless [he] is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Commissioner of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

Here, all the conditions of the credit-as-true rule are satisfied. First, the record has been fully developed and there is no need for further administrative proceedings. Second, the ALJ failed to provide legally sufficient reasons for rejecting the opinion of Dr. Helms. Third, if Dr. Helms's opinions are credited as true the ALJ would be required to find plaintiff disabled at

Step Three or Five on remand. *Garrison*, 759 F.3d at 1022; *Holohan*, 246 F.3d at 1211.

In crediting Dr. Helms's opinions as true, plaintiff's schizophrenia satisfies the criteria of Listing 12.03. With respect to the "A" criteria, Dr. Helms diagnosed plaintiff with schizophrenia paranoid type and noted that plaintiff endorsed symptoms of delusions and hallucinations. *See generally*, Tr. 218-19, 221, 250, 298, 309, 312, 315, 318, 324. In terms of the "B" criteria, Dr. Helms opined that plaintiff is markedly limited in a majority of areas within the categories of concentration, persistence, and pace and social functioning, thus satisfying the "A" and "B" criteria of Listing 12.03. Tr. 293-94. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C.

In the alternative, when crediting Dr. Helms's opinions as true, the ALJ would be required to find plaintiff disabled at Step Five. In this regard, in finding a marked limitation in concentration, persistence, and pace, Dr. Helms opined that plaintiff is unable to sustain a normal workday or workweek without significant interruptions from symptoms. Tr. 290, 294. At the hearing, the VE testified that if a person were off task ten percent of the time due to an intrusion from their symptoms, this person would not be able to maintain competitive employment. Tr. 41. Therefore, there are no outstanding issues that require resolution.

Lastly, considering the record as a whole and the Commissioner's arguments, I have no basis to doubt that plaintiff is disabled under the Act. Therefore, the proper remedy is to remand for calculation of benefits. *Garrison*, 759 F.3d at 1022-23.

### CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is REVERSED and this proceeding is REMANDED for an immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this ___11___ day of February, 2015.

Malcolm F. Marsh
United States District Judge

22 - OPINION AND ORDER